**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 16 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

BROOKE KEIRSEY, an individual,

     Plaintiff,

v.

BANNER LIFE INSURANCE
COMPANY, a foreign corporation,

     Defendant-Third-Party-
     Plaintiff-Appellant,

v.

GENE IMKE and SUZY IMKE, jointly
and severally d/b/a Imke & Associates,

     Third-Party-Defendants-
     Appellees.

No. 03-6013
(Western District of Oklahoma)
(D.C. No. CIV-01-1574-L)

---

**ORDER AND JUDGMENT**[*]

---

Before **EBEL**, **ANDERSON**, and **MURPHY**, Circuit Judges.

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

## I. INTRODUCTION

In 2002, Plaintiff-Appellant Banner Life Insurance Co. ("Banner"), filed a third-party complaint against Gene and Suzy Imke (the "Imkes"). The Imkes are independent insurance agents/brokers and the claims Banner asserted against them related to an application for a life insurance policy submitted by one of their clients, Bryan Keirsey. Banner alleged that negligent and fraudulent acts committed by the Imkes resulted in its liability to Mr. Keirsey's surviving spouse under the terms of a conditional receipt. The parties filed cross-motions for summary judgment. In their motion for summary judgment, the Imkes argued, *inter alia*, that Mr. Keirsey's policy was in effect on the date of his death notwithstanding the fact that the policy had not been physically delivered to him. Relying on *Mid-Continent Life Insurance Co. v. Dees*, 269 P.2d 322 (Okla. 1954), the district court granted summary judgment in favor of the Imkes and Banner appealed. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, this court **affirms** the district court's order.

## II. FACTUAL BACKGROUND

The Imkes are insurance agents doing business in the state of Oklahoma as Imke and Associates. In 2001, the Imkes were under contract with Banner to solicit applications for Banner's insurance policies. With the assistance of the Imkes, Mr. Keirsey applied for a life insurance policy with Banner and signed a

formal application for $250,000 of insurance on June 14, 2001. In the application, he specifically elected to have the monthly premium payments automatically deducted from his checking account pursuant to Banner's pre-authorized check plan.

The Imkes advised Mr. Keirsey to include a check for $15.00 with his application. This amount was more than the $14.44 monthly premium but less than two months' premium. The Imkes accepted both the application and the $15.00 check from Mr. Keirsey and provided him with a Banner conditional receipt. The purpose of the conditional receipt was to provide temporary coverage to Mr. Keirsey prior to delivery of the policy by Banner. Coverage under the conditional receipt terminated "the date the policy is delivered to the Owner."

On July 26, 2001, Banner approved Mr. Keirsey's application and issued policy No. 17B330677 to him. The policy was mailed to the Imkes and they received it on August 1, 2001. Mr. Keirsey died four days later. The policy was not physically delivered to Mr. Keirsey prior to his death. Mr. Keirsey's surviving spouse made a claim under the policy which Banner denied. Banner initially took the position that Mr. Keirsey had no coverage under the conditional receipt because the Imkes collected and remitted only one month's premium. Banner based its decision on the terms of the conditional receipt which stated,

CONDITIONS WHICH MUST BE MET BEFORE INSURANCE MAY BECOME EFFECTIVE PRIOR TO DELIVERY OF THE POLICY:

1. An amount equal to the modal premium indicated on the application must be submitted; . . . pre-authorized check plan (two months' premium required) . . . .

Mrs. Keirsey filed a complaint against Banner in the United States District Court for the Western District of Oklahoma, alleging that Banner acted in bad faith by refusing to pay her claim. Several months later, Banner filed a third-party complaint against the Imkes alleging six causes of action: (1) breach of fiduciary duty, (2) breach of contract, (3) negligence, (4) constructive fraud, (5) indemnification, and (6) setoff/declaratory judgment. In essence, Banner alleged that the Imkes' failure to collect the full two months' premium payment from Mr. Keirsey resulted in the claims asserted against it by Mrs. Keirsey. Banner eventually entered into a settlement agreement with Mrs. Keirsey, but continued to pursue its claims against the Imkes.

In September and October 2002, the parties filed cross-motions for summary judgment. In their motion, the Imkes argued, *inter alia*, that any defects in the conditional receipt were irrelevant because the policy was in effect on the date of Mr. Keirsey's death. In its response to the Imkes' motion for summary judgment, Banner argued that the policy was not in effect because two of the conditions precedent in the application had not been met: (1) the policy was not physically delivered to Mr. Keirsey during his lifetime, and (2) Mr. Keirsey was

-4-

not "actually in the state of health and insurability represented in . . . [his] application." The district court rejected Banner's argument, concluding that physical delivery of the policy was unnecessary under Oklahoma law. *Dees*, 269 P.2d at 323. Accordingly, the district court entered summary judgment in favor of the Imkes. Banner then brought this appeal.

## III. DISCUSSION

This court reviews a grant of summary judgment de novo, applying the same standard employed by the district court. *Welding v. Bios Corp.*, 353 F.3d 1214, 1217 (10th Cir. 2004). A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

Banner does not dispute that its claims against the Imkes should be resolved in favor of the Imkes if this court concludes that the policy was in effect at the time of Mr. Keirsey's death. Instead, Banner first reasserts the argument it made before the district court that the policy was not in effect because it was not physically delivered to Mr. Keirsey during his lifetime. The application completed by Mr. Keirsey and submitted to Banner provides,

> Except as may be provided in a duly issued Conditional Receipt, no insurance shall take effect unless and until the policy has been

physically delivered and the first full premium paid during the
lifetime of the insured(s) and then only if the person(s) to be insured
is (are) actually in the state of health and insurability represented in
Parts I and II of this application and any supplements thereto . . . .

Banner argues that this language created a condition precedent to the
effectiveness of the policy; namely, the policy had to be *physically delivered to
Mr. Keirsey* while he was still alive.

In *Mid-Continent Life Insurance Co. v. Dees*, the Oklahoma Supreme Court
rejected the argument that "depositing the policy in a postage prepaid envelope
addressed and mailed to [the] agent is not a delivery to the insured person." 269
P.2d at 323. The court held, instead, that when

> the first premium has been paid, the application has been approved,
> the policy executed in accord therewith thereby completing the
> insurance contract, and nothing remains to be done but to deliver the
> policy to the insured . . . the mailing of the policy to the agent
> unconditionally while insured was in good health and alive, to be
> given by him to the insured person constitutes delivery in law,
> manual delivery, or further acceptance, being unnecessary.

*Id*. The district court noted that the parties did not contest that Mr. Keirsey paid
the first months' premium.[1] It then found that the application was approved, and

---

[1]Banner asserted at oral argument that the first premium had not been paid
and, thus, the policy was not in effect regardless of whether it was physically
delivered to Mr. Keirsey. There is no doubt that this argument was not made in
the briefs Banner submitted to this court. In its opening brief, Banner framed the
issues as follows:

> The unmistakable clear evidence in the present case establishes that
> the Banner Application contained two express conditions precedent

the policy issued and received by the Imkes prior to Mr. Keirsey's death. Banner does not challenge these findings on appeal. Instead, it simply asserts that the language in the application signed by Mr. Keirsey required physical delivery to Mr. Keirsey before his death. Banner, however, has failed to identify any material difference between the language in the application signed by Mr. Keirsey and the language in the application before the Oklahoma Supreme Court in *Dees*. Thus, Banner's argument regarding physical delivery of the policy to the insured is clearly foreclosed by the holding in *Dees*.

In the alternative, Banner argues that the equitable doctrine of constructive delivery set out in *Dees* is inapplicable in this case because the policy was not *unconditionally* delivered to the Imkes. In support of this argument, Banner relies on the fact that the policy was mailed to the Imkes together with a document entitled, "Amendment to Application" and a cover letter titled, "Delivery Requirements."[2] The Amendment to Application form states,

> that did not occur prior to Bryan Keirsey's death. Namely, the Policy had not been "**physically** delivered . . . during [his] lifetime"; and (ii) Mr. Keirsey was not "actually in the state of health and insurability represented in . . . [his] application."

Accordingly, the argument regarding the payment of the first premium is waived. *United States v. Abdenbi*, 361 F.3d 1282, 1289 (10th Cir. 2004).

[2]Although the Imkes deny receiving either the Amendment to Application or cover letter, we will assume for purposes of this appeal that both were delivered with the policy.

The Banner Life Insurance Company is hereby authorized to amend the application identified above in the following manner:

Part I Question #32 shall read: no
Part I Question #25 shall read: $250,000/OPTerm 10/Standard Plus Non Tobacco
Part I Question #29 shall read: none

Below this text is a line for Mr. Keirsey's signature. Banner asserts that an amendment to the application was necessary because Mr. Keirsey left three questions blank when he completed the application. The testimony of Banner's own witness refutes Banner's assertion that it was necessary for Mr. Keirsey to complete the questions which he left blank on his application before the policy became effective. Brian O'Flaherty, the underwriter who approved Mr. Keirsey's application, testified that he had already obtained the information requested in the Amendment to Application and that the failure to complete the questions properly had no effect on the issuance of the policy.

Banner also argues that the Amendment to Application constitutes a counter-offer for coverage at a higher premium than was requested by Mr. Keirsey in his application. Banner, accordingly, goes on to argue that Mr. Keirsey was required to sign the Amendment to Application and accept the counter-offer before the policy became effective. Despite Banner's assertion that "the record demonstrates that Banner did not accept Mr. Keirsey's offer, but rather, made a counter-offer for a higher premium," we could find no such evidence in the

record. Our review of the record reveals that Banner's assertion is misleading and disingenuous. The uncontroverted evidence demonstrates that the policy issued to Mr. Keirsey was the same policy for which he applied.

Suzy Imke testified that Mr. Keirsey first applied for a life insurance policy with Massachusetts Mutual Life Insurance Company. When Mr. Keirsey was not approved at the preferred rate, he asked the Imkes to attempt to secure a better rate from other companies. Suzy Imke further testified that Mr. Keirsey's information was transmitted to Banner and it informally approved him for insurance at its "Standard Plus" rates. Gene Imke testified that Banner quoted Mr. Keirsey an annual premium of $165.00 for $250,000 of life insurance at the Standard Plus rate. Based on that quote, Gene Imke calculated the monthly premium payment which was paid by Mr. Keirsey and forwarded to Banner with the application. The policy issued to Mr. Keirsey clearly states that the rating classification is "Standard Plus" and that the annual premium is $165.00.

In a vitriolic and thoroughly unprofessional manner, Banner criticizes the Imkes for relying only on citations to their testimony regarding whether the policy Mr. Keirsey applied for was the policy which Banner issued. As the party opposing the Imkes' motion for summary judgment, however, it is Banner's burden "to make a showing sufficient to establish the existence of an element essential to [its] case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

Banner has utterly failed to do this. In support of its argument that the documents it allegedly sent to the Imkes together with the policy constituted a counter-offer for insurance at a higher premium, Banner relies solely on Mr. Keirsey's failure to complete Question #27 of the application which states, "If our underwriting indicates that we cannot give you the lowest rate for the Plan of Insurance, will you consider a higher rate?" In light of the Imkes' uncontroverted testimony and the evidence that Mr. Keirsey remitted a monthly premium payment commensurate with a Standard Plus policy carrying a $165.00 annual premium, Mr. Keirsey's application, even with the incomplete question, does not constitute any evidence that he applied for the "lowest premium rate," a rate for which he knew he did not qualify.

Having rejected each of Banner's arguments, we conclude that the policy was unconditionally delivered to the Imkes on August 1, 2001. Consequently, the policy was in effect at the time of Mr. Keirsey's death and the district court properly dismissed Banner's claims against the Imkes, all of which were predicated on the conditional receipt.

## III. CONCLUSION

The order of the district court granting summary judgment in favor of the Imkes is **affirmed**.

ENTERED FOR THE COURT


Michael R. Murphy
Circuit Judge